IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JENNIFER MURPHY, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 4:16-cv-00775-O-BP |
| NANCY A. BERRYHILL,<br>**Acting Commissioner of the Social<br>Security Administration,** | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jennifer Murphy ("Murphy") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned RECOMMENDS that United States District Judge Reed O'Connor AFFIRM the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Murphy filed for SSI on December 22, 2011, alleging that her disability began on September 12, 2010. (Transcript ("Tr.") 20). The Commissioner denied her claim on May 9, 2012. *Id.* Following the denial, the Commissioner reopened Murphy's previous application from January 19, 2011 under 20 C.F.R. § 416.1488. Murphy requested a hearing, which was held before Administrative Law Judge Theodore Burock ("ALJ") on July 3, 2013, in Harrisburg,

Pennsylvania. (*Id.*). The hearing was continued to allow for the submission of additional medical evidence. (*Id.*). Murphy appeared at a second and third hearing held on December 12, 2013 and August 21, 2014, respectively. (*Id.*). At each hearing, Murphy testified with the assistance of a Spanish interpreter. (*Id.*). The ALJ issued his decision on December 8, 2014, finding that Murphy was not disabled. (Tr. 36).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Murphy had not engaged in substantial gainful activity since January 19, 2011, the prior application date. (Tr. 22). At step two, the ALJ determined that Murphy's combined impairments constituted a severe impairment, comprised of affective disorder, anxiety related disorder, cognitive disorder, personality disorder, degenerative joint disease of the bilateral knees, history of thyroid cancer, post-surgical hypothyroidism, and obesity. (*Id.*) At step three, the ALJ found that Murphy's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 24). In particular, the ALJ concluded that Murphy retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with excepted limitations. (Tr. 27). At step four, the ALJ found that Murphy had not reported earnings that rose to the level associated with substantial gainful activity in the fifteen years prior to the application date and, accordingly, had no past relevant work. (Tr. 34). At step five, the ALJ ruled that after considering Murphy's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Murphy can perform. *See* 20 C.F.R. §§ 416.969, 416.969(a); (Tr. 35).

The Appeals Council denied review on June 24, 2016. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review.

*Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

On August 18, 2016, Murphy filed her Complaint against the Commissioner. ECF No. 1. Murphy also filed a Motion to Proceed *In Forma Pauperis* that same day, which the Court granted on September 13, 2016. ECF Nos. 4, 7. Thereafter, on November 29, 2016, the Commissioner filed her answer to Murphy's complaint. ECF No. 11. On November 30, 2016, the Court issued an Order Directing Filing of Briefs, which required Murphy to file a brief, within 40 days, that set forth all the errors that Murphy contends entitle her to relief. ECF No. 14. Murphy failed to comply with the Court's Order. On January 11, 2017, Murphy filed correspondence to the Court, stating that she had moved to Florida and was attempting to retain counsel to assist her in this matter. ECF No. 15. Considering the correspondence, the Court entered an Order on January 13, 2017 extending the time for Murphy to file her brief to January 27, 2017 and cautioning Murphy that failure to file a brief would lead the Court to recommend dismissal for want of prosecution. ECF No. 16.

Without receiving a brief from Murphy, the Court entered an Order on February 6, 2017 instructing the Commissioner to file her brief on the merits by February 27, 2017. ECF No. 17. The Commissioner timely filed her Brief, arguing that the ALJ's decision issued on December 8, 2014, was supported by substantial evidence and guided by the correct legal standards. ECF No. 19. Murphy filed a Motion for Extension of Time to file her brief on March 6, 2017. ECF No. 20. The Court granted Murphy's Motion for Extension of Time on March 8, 2017, requiring that Murphy file her brief on or before April 7, 2017, and again cautioned Murphy that failure to do so would lead the Court to recommend dismissal of her claim for want of prosecution. ECF No. 22.

On April 17, 2017, the Court received additional correspondence from Murphy that again requested an extension to file her brief. ECF No. 23. The Court granted Murphy's request for an extension on April 18, 2017, giving her until May 2, 2017 to file her brief. ECF No. 24. As of the date of this Order, Murphy has failed to file any brief with the Court setting forth all claims of error that Murphy believes entitles her to relief.

## II.   FACTUAL BACKGROUND

According to Murphy's pleadings, testimony at the administrative hearing, and the administrative record, Murphy was 37 years old on the alleged disability onset date, and 39 years old at the time of the administrative hearing. (Tr. 20, 82). She completed a high-school education in Puerto Rico. (Tr. 83). Murphy asserts that her physical impairments render her disabled under the SSA. (Tr. 277).

## III.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002);

20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the

Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

As of the date of this Findings, Conclusions, and Recommendation, Murphy has failed to file a brief that raises specific issues for this appeal. However, the Court has reviewed the ALJ's decision and the full administrative record to determine whether the ALJ applied the correct legal standards and whether his determination is supported by substantial evidence.

The ALJ's analysis contained all five sequential steps required by 20 C.F.R. § 404.1520. The undersigned finds that each step in the sequential analysis is guided by the proper legal standard and is supported by substantial evidence from the record. At step one, the ALJ found that Murphy had not been engaged in substantial gainful activity since January 19, 2011, the prior application date, and therefore continued to step two. (Tr. 22).

At step two, the ALJ determined that Murphy had several severe impairments, which included affective disorder, anxiety related disorder, cognitive disorder, personality disorder, degenerative joint disease of the bilateral knees, history of thyroid cancer with post-surgical hypothyroidism, and obesity. (*Id.*). Citing the proper standard, the ALJ found that these impairments were severe because they lasted or were expected to last more than twelve continuous months and cause more than minimal limitations in Murphy's ability to perform basic work activities. (*Id.*) The ALJ acknowledged that Murphy also alleged disability due to sleep apnea, hypertension, hyperlipidemia, and hand numbness (Tr. 307-314, 328-338, 349-359). However, relying on the evidence in the record, the ALJ determined that these additional impairments were

not severe. (Tr. 23). The ALJ reasoned that the record does not contain objective evidence in support of sleep apnea, regardless of how many symptoms Murphy alleged. (Tr. 23, 789-792). In regards to hypertension and hyperlipidemia, the ALJ found that these disorders were well controlled with medication and relied on the State agency medical consultant's opinion that the disorders did not cause more than a minimal limitation in Murphy's ability to perform basic work activities. (Tr. 23, 91-101).

Continuing to step three, the ALJ found that Murphy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Listing. 20 C.F.R. § 404.1520(d). As to Murphy's knee disorder, the ALJ determined that the record evidenced Murphy had been able to ambulate effectively throughout the time of her claimed disability. (Tr. 24, 307-314, 349-359, 421-422, 473-479, 487-488, 505-515, 542-555, 586-620, 633-661, 697-723, 728-741, 746-803, 816-829). The ALJ also found that neither Murphy's history of thyroid cancer nor her residual post-surgical thyroid disorder met Listing 13.09. (Tr. 24). The ALJ cited evidence that Murphy's thyroid was removed in 1998 and that she underwent hormone replacement therapy since its removal. (Tr. 24, 661-62, 682). The record contains evidence that Murphy had normal gait, motor strength, reflexes, and sensation. (Tr. 444, 447, 457, 477, 514, 588, 598, 670, 682, 702, 713, 720, 729, 735, 784, 800). In regards to Murphy's obesity, the ALJ noted that Murphy did not report or testify to any functional limitations related to her obesity and found that her obesity did not result in a sufficient symptom or functional impairment to meet a listed impairment. (Tr. 25).

The ALJ also determined that Murphy's alleged mental impairments did not either alone or in combination meet the required criteria of Listing 12.02. (Tr. 25). The ALJ considered whether the mental impairments alleged by Murphy met the "paragraph B" criteria which requires the

impairments to result in at least two of the following for an extended duration: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. (Tr. 25). The opinions of the State agency psychological consultants were given significant weight by the ALJ in reaching his determination, and after considering the full record, the ALJ found that Murphy's mental limitations did not rise above the mild level in activities of daily living or the moderate level in social functioning and concentration, persistence, or pace. (Tr. 26, 91-101, 103-118). Analyzing episodes of decompensation, the ALJ found that Murphy had not experienced episodes of decompensation for extended durations, but had on rare occasion sought emergency treatment of anxiety. (Tr. 26-27, 440-451, 662-674). Without evidence of inpatient hospitalization, intensive outpatient partial hospitalization, or any other increase in outpatient psychiatric, psychological, therapeutic, or pharmacological treatment indicative of an extended episode of decompensation, the ALJ determined that Murphy did not have a mental impairment that resulted in repeated episodes of decompensation for extended durations. (Tr. 27). Finding that Murphy's alleged mental impairments did not cause at least two of the limitations, the ALJ determined that the "paragraph B" criteria were not satisfied and continued his analysis to determine Murphy's RFC. (Tr. 25).

The ALJ found that Murphy has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with additional restrictions. (Tr. 27). The ALJ properly applied the two-step process, requiring him to first determine whether an underlying medically determinable physical or mental impairment could be reasonably expected to produce Murphy's pain or symptoms and second to evaluate the extent to which the pain or symptoms limit Murphy's functioning. (Tr. 28). The ALJ determined that though the physical and mental disorders could

reasonably be expected to cause the alleged symptoms, the statements made by Murphy concerning their limiting effects were not entirely credible. (Tr. 29).

Acknowledging Murphy's alleged debilitating physical disorders, the ALJ determined that the underlying disorders and their prescribed course of treatment were inconsistent with the alleged degree of functional loss. (Tr. 29). As previously mentioned, the ALJ noted that Murphy underwent thyroidectomy in September 1998, followed by three courses of radioiodine, without any evidence of metastases or recurrence on any subsequent scan. (Tr. 29, 391-420, 440-451, 516-529, 586-594, 627-632, 647-661, 783-788). Furthermore, the ALJ determined that, contrary to Murphy's various reports, she had no need for further radioiodine treatment. (Tr. 783-788). The ALJ also found that Murphy's surgically induced hypothyroidism has been controlled with hormone replacement therapy and is not suggestive of any secondary functional loss. (Tr. 29). In regards to Murphy's body fatigue, hand numbness, and degenerative joint disease, the ALJ found that these impairments did not require any significant treatment except for brief physical therapy. (Tr. 29). The ALJ also acknowledged that Murphy was prescribed a cane in July 2013, but noted that this was prescribed at Murphy's request and ultimately was not medically necessary. (Tr. 29, 647-661). After considering all of the evidence in the record, the ALJ ultimately determined that even when considering all of Murphy's physical impairments in combination with her obesity, the record lacked evidence to support the dramatic degree of functional loss alleged. (Tr. 29).

Addressing Murphy's mental impairments, the ALJ relied on opinion evidence from Drs. Yuri Yaroslavsky and Ralph Picciotto to determine that Murphy's mental health disorders did not rise above the mild level in activities of daily living or moderate level in social functioning and concertation, persistence, or pace. (Tr. 26, 427-433, 489-494, 530-541). Dr. Yaroslavsky noted that Murphy's anxiety attacks were infrequent and that she was doing "quite well" despite running

9

out of medication. (Tr. 530). In his consultative examination report, Dr. Picciotto opined that Murphy would have no problem understanding, remembering, or carrying out short simple instructions; making judgments on simple work-related decisions; interacting appropriately with the public and supervisors; and withstanding routine changes at work. (Tr. 32-33, 432). Furthermore, Murphy's attending physicians found that she had full alertness and orientation, appropriate judgment and insight, no delusions, no psychosis, pleasant and cooperative demeanor, fair-to-good insight and judgment, and logical thought processes. (Tr. 30, 444, 465-466, 475-477, 530-537, 598, 624, 635-641, 657, 702, 713, 720, 729). The ALJ ultimately determined that Murphy's mental disorders limited her to no public interaction, occasional co-worker and supervisor interaction, and only occasional changes in the work setting. (Tr. 28).

Finding that Murphy had no past relevant work to consider, the ALJ proceeded to the fifth and final step in his analysis, where he determined that Murphy was capable of working as a dowel inspector, final assembler, and table worker. (Tr. 34-35). The ALJ considered Murphy's age, education, work experience, RFC, and her illiteracy in the English language in determining that there are a significant number of jobs in the national economy that she can perform. (Tr. 35). After a full review of the ALJ's determination, the undersigned finds that the ALJ applied the proper legal standards and his decision is supported by substantial evidence.

## V. CONCLUSION

The ALJ properly weighed the medical opinions and other evidence of record and properly completed the sequential evaluation process. Substantial evidence supports the ALJ's finding that a substantial number of jobs exist in the national economy that Murphy is capable of performing. Because the ALJ applied the proper legal standards and substantial evidence in the record supports

the ALJ's factual findings, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on May 3, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE